(No. 63120.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRENDA WATSON, Appellee.

*Opinion filed September 21, 1987.*

CUNNINGHAM, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris and Kim G. Noffke, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Larry R.

Wells, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

Laura E. Tilly and George F. Galland, Jr., of Davis, Barnhill & Galland, of Chicago (David Peterson, of Springfield, of counsel), for *amicus curiae* AFSCME, Local 2000.

JUSTICE RYAN delivered the opinion of the court:

Defendant, Brenda Watson, was charged by information with aggravated battery in violation of section 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 12—4). The circuit court of Jackson County, upon allowance of defendant's motion to dismiss the charge, held section 12—4(b)(5) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(5)) unconstitutional, and the People appealed pursuant to Rule 603 (107 Ill. 2d R. 603).

The original information charged that the defendant committed aggravated battery in that she struck and caused bodily harm to a person whom she knew to be an employee of the Jackson County Department of Public Aid. (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(5).) The information was later amended to include a second count, which based the enhancement to aggravated battery on the allegation that the battery occurred on public property, namely the Jackson County office of the Illinois Department of Public Aid. Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(8).

Section 12—4 provides, in pertinent part:

"(b) A person who, in committing a battery, commits aggravated battery if he either:

* * *

(5) Knows the individual harmed to be a caseworker, investigator, or other person employed by the State Department of Public Aid or a County Department of Public Aid and such caseworker, investigator, or other person is

upon the grounds of a Public Aid office or grounds adjacent thereto, or is in any part of a building used for Public Aid purposes, or upon the grounds of a home of a public aid applicant, recipient, or any other person being interviewed or investigated in the employee's discharge of his duties, or on grounds adjacent thereto, or is in any part of a building in which the applicant, recipient, or other such person resides or is located;

\* \* \*

(8) Is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement." Ill. Rev. Stat. 1983, ch. 38, pars. 12—4(b)(5), (b)(8).

In holding the statute unconstitutional, the circuit court found that the statute violates the equal protection clauses of the Illinois (Ill. Const. 1970, art. I, sec. 2) and United States (U.S. Const., amend. XIV) Constitutions by elevating the commission of battery on a State or county public aid worker to aggravated battery, but not so elevating the battery of a local public aid employee.

The People first argue that defendant is without standing to contest the validity of the statute in question. Citing *People v. Mayberry* (1976), 63 Ill. 2d 1, the People urge that since defendant is charged with and could be properly prosecuted under both sections 12—4(b)(5) and 12—4(b)(8), the language charging defendant under section 12—4(b)(5) is merely duplicative and, reading the statute as a whole, it has no adverse impact on defendant's rights. The People further argue that defendant cannot challenge the validity of section 12—4(b)(5) because the battery with which she was charged was committed in a public place which is under the purview of section 12—4(b)(8), and, as a result, defendant is attempting to challenge the statute on the basis that it could hypothetically be applied unconstitutionally to another party under section 12—4(b)(5). (*People v. Garrison* (1980), 82 Ill. 2d 444.) Finally, relying on *People v.*

*Matkovick* (1984), 101 Ill. 2d 268, the People urge that defendant has no standing to challenge the penalties prescribed by the statute because she has suffered no adverse consequences in that she has not been found guilty and no sentence has been imposed.

We reject these contentions. In *People v. Ziltz* (1983), 98 Ill. 2d 38, 41, the court stated that "a defendant has standing to challenge the validity of a statute if he or she has sustained, or is in the immediate danger of sustaining, some direct injury as a result of enforcement of the statute. [Citations.]" Defendant here is not attempting to apply the statute to a hypothetical situation: defendant was clearly charged with the violation of section 12—4(b)(5) and, if convicted, she will sustain direct harm. Hence, defendant possesses standing to challenge the constitutionality of the statute under which she is to be prosecuted.

We consider next the question whether, as asserted by defendant, the statute creates an unreasonable classification violative of the equal protection provisions of the Federal and Illinois Constitutions. We recently stated in *People v. Tosch* (1986), 114 Ill. 2d 474, 480-81:

> " 'The fourteenth amendment to the Federal Constitution requires equality between groups of persons "similarly situated." It does not deny a State the power to treat different classes of persons differently. (*Eisenstadt v. Baird* (1972), 405 U.S. 438, 446-47, 31 L. Ed. 2d 349, 358, 92 S. Ct. 1029, 1034-35; *People v. Mathey* (1983), 99 Ill. 2d 292, 296; *People v. Bradley* (1980), 79 Ill. 2d 410, 416.) In fact, in the absence of a fundamental right or suspect classification, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so. (*Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 312-13, 49 L. Ed. 2d 520, 524, 96 S. Ct. 2562, 2566-67; *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 204; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578.) This is the tradi-

tional equal protection analysis that has been used by this court in assessing both Federal and State equal protection challenges. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 121; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76.) Under this analysis, " '[a] classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' " *Eisenstadt v. Baird* (1972), 405 U.S. 438, 447, 31 L. Ed. 2d 349, 359, 92 S. Ct. 1029, 1035, citing *F. S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 64 L. Ed. 989, 990, 40 S. Ct. 560, 561-62.' " 114 Ill. 2d 474, 480-81, quoting *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477.

The circuit court here found that State and county public aid caseworkers and investigators are similarly situated to caseworkers and investigators employed by other governmental units who perform the same duties. The court further stated that there was no justifiable basis for such a classification. We disagree.

It is well settled that, absent the existence of a fundamental right, a State may differentiate between persons similarly situated as long as there is a rational basis for doing so. (*People v. Tosch* (1986), 114 Ill. 2d 474, 481.) Furthermore, the legislature has often enacted, and the courts sustained, statutes which are designed to afford special protection to those subjected to greater risks in performing special duties. (See Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b)(6); *People v. Hanson* (1972), 53 Ill. 2d 79 (enhancement of battery to aggravated battery where victim is a peace officer); Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(6); *In re V.P.* (1985), 139 Ill. App. 3d 786 (enhancement of battery to aggravated battery where victim is a group worker at a county youth detention home).) Under the Public Aid Code, the Illinois De-

partment of Public Aid and the county departments of public aid are charged with the powers and duties of administering those programs set forth under articles III, IV, V, VII, and XII of the Code (Ill. Rev. Stat. 1983, ch. 23, pars. 12—1, 12—2, 12—4). These duties include administering programs providing aid to the aged, blind and disabled (Ill. Rev. Stat. 1983, ch. 23, pars. 3—1 through 3—15); providing aid to families with dependent children (Ill. Rev. Stat. 1983, ch. 23, pars. 4—1 through 4—12); providing medical assistance (Ill. Rev. Stat. 1983, ch. 23, pars. 5—1 through 5—14); and providing aid to the medically indigent (Ill. Rev. Stat. 1983, ch. 23, pars. 7—1 through 7—6). Local governmental units are empowered with the authority to "provide funds for and administer the programs provided in [article VI (Ill. Rev. Stat. 1983, ch. 23, par. 6—1 et seq.)]" and to "provide the social services and utilize the rehabilitative facilities authorized in Article IX [(Ill. Rev. Stat. 1983, ch. 23, par. 9—1 et seq.)]." Ill. Rev. Stat. 1983, ch. 23, par. 12—3.

It is thus apparent from the provisions of the Code itself that State and county public aid employees have powers and duties which are much more extensive than those employed by their local counterparts. Based on this vast differential in duties, the General Assembly has apparently recognized that State and county public aid workers are placed in a position of great risk and responsibility in planning, investigating and administering the public aid program, and that the imposition of a special punishment for a battery committed on a State or county public aid employee is necessary in order to protect the safety of those persons. This was a legislative determination. We find that the classification is reasonably related to a legitimate governmental objective. As the court has stated, " '[w]hether the course chosen by the General Assembly to achieve a desired result is ei-

ther wise or the best means available is not a proper subject of judicial inquiry.' " *People v. Tosch* (1986), 114 Ill. 2d 474, 482, quoting *Garcia v. Tully* (1978), 72 Ill. 2d 1, 10.

For the reasons stated, we find that the classification is reasonable and the statute valid. The judgment of the circuit court of Jackson County is reversed, and the cause remanded to that court for proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.